My name is Deborah Bookout, and I'm here representing Petitioner-Appellant Elizabeth Powell. For Ms. Powell, the sentence of life without the possibility of parole means life in prison. It means no possibility of commutation of that sentence to a parole-eligible sentence. It means, in short, that Ms. Powell will die in prison. Ms. Powell contends that counsel's failure to present evidence of mitigation at her sentencing hearing that might well have impacted the court to sentence and influenced his decision to impose a sentence of life with the possibility of parole was ineffective. With regard to counsel's performance, we have evidence of his deficient performance. The record shows that rather than make an informed decision as to what material evidence he might present or might not present at the sentencing hearing, the record reflects that he actually failed to investigate the existence of mitigation evidence in the first instance. We know that counsel was aware that there was some potentially very disturbing mitigation evidence that might have been or would have been quite impactful prior to the sentencing hearing because he testified at the post-conviction hearing that he and Ms. Powell discussed her childhood, and he was aware that she had been both physically and sexually abused during her childhood. We also know that he was aware of some abuse in her history because he had received the PSI report, the pre-sentence investigation report, which referenced in somewhat vague generic terms that she had, in fact, suffered abuse as a child. With regard to the prejudice prong of Strickland, which we already ---- Scalia. Would you, a little bit, please take a seat if they're going to stay? Oh, I'm sorry. Go ahead. Okay. You understand, ma'am, I guess, and I'm not trying to stop you in the middle of your that what the Nevada Supreme Court did was not contrary to or an unreasonable application of Supreme Court law. Right. And if we look at what they said about the new evidence, it seems to me they went through it, and they said even if counsel were deficient in failing to investigate mitigating evidence, that there's not any new evidence shown in the record to suggest that the outcome would have been different otherwise. Now, I reviewed the record, and I guess I don't know how they were unreasonably applying Supreme Court precedent in that decision. I think I might have to disagree with the Court's interpretation of the Nevada Supreme Court's finding. It isn't clear to me that the Nevada Supreme Court's finding was, in fact, an assessment in determining that there was no ineffective assistance of counsel, that there was an assessment of what, in fact, could have been presented or was presented later on in the postconviction hearing in terms of mitigation. The Supreme Court found all that the Supreme Court did was reference that counsel had pointed out via the presentence report that there was abuse, sexual and physical, in Ms. Powell's history. In my view, the Nevada Supreme Court ignored any of the specific evidence that Ms. Powell provided at the postconviction hearing, where she identified who it was that abused her, that the – and when and how old she was, and the fact that she had been subject to sexual abuse, all of this occurring before she was 10 years old. In my view, the Nevada Supreme Court's ignoring that new evidence is why it's an unreasonable application of clearly established Federal law being strickland, because without that assessment of what was presented and what could have been presented, it couldn't have made a decision in terms of the prejudice to Ms. Powell at her sentencing. Additionally, I think that the Nevada Supreme Court's opinion assumes that counsel's failure to present or investigate mitigation evidence or his decision not to was – the investigation was adequate or his decision not to was reasoned when the record shows that he made no attempts at all to investigate the mitigation evidence. So he couldn't have made an informed decision about what to present, because he made no investigation in the first place. Well, I think Judge Smith isn't saying that he didn't fail to make proper investigations. He's saying even if he did, there was no prejudice. Well, I think their opinion to – in my view, their opinion is somewhat vague. So I think that at the end of the day, the easiest way to read it is that it was a finding that, yes, there was no prejudice to Ms. Powell. But what – but in making that decision, the Court failed to assess what it was that counsel could have presented. And I think that then we look to what she testified to at the post-conviction hearing. And I would submit that the reference to her abuse in the PSI, as opposed to what her brother, who was a subject of abuse as well, her mother, who it appears was available for – to testify, or any other family relatives or friends who were around at that time, that seems to me that that evidence that would – with regard to the nature and extent of her abuse during this time period would be vastly more compelling than the generic reference contained in the PSI report. Well, so it seems to me that what you're saying is then, I admit this evidence was before the Court. I just think somebody should have made a bigger deal of it. I suppose you could put it that way. I mean, I'm just trying to – because that is not enough to get you passed in effective assistance of counsel, in my view, based on prejudice. I think – let's see if I can address the Court's question. There are cases in which the sentencing court was aware of some mitigation evidence, references in the PSI, maybe references in some other reports that the Court had before it. And Lambright v. Stewart and Smith v. Stewart, those were cases in which there was some evidence presented about the history of the defendants, but the Court found that the failure to go further and follow up on or unearth more about that type of evidence, that was ineffective with respect to the deficiency prong. So we – I would argue that this is a similar situation. So when it comes to prejudice, again, if counsel was ineffective for failing to unearth the mitigation evidence that he had notice of, then later, when there is evidence of what that mitigation might have been, the Court's failure to assess those differences is why their decision on prejudice was an unreasonable application of Strickland. And then in terms of the prejudice, I think that by looking to what it was that Ms. Powell was able to tell the Court at postconviction with regard to the nature of the abuse and when and who it was, I mean, the fact is she identified that she was physically abused by all of the people who were supposed to protect her, her father, her stepmother, her sister, her brother-in-law, and then she was sexually approached by her stepbrother. Those facts could very well have made the difference. Those were facts that the Court did not have before it at the sentencing hearing. Could you now turn to another subject, because we've got six minutes left, and talk a bit about the issue of the admission of bad conduct, talking about a prior murder and where I could do it to the other person also? The reference that I will do you to? Yeah. And what's the Court's question? Could you discuss that issue? Well, the claim that Ms. Powell makes with regard to that issue is that it was something that the counsel was aware of that was going to come up, because he was aware of the statements that that witness had made to the police. Was it Levitt? Right. It was Levitt. What happened, counsel was somewhat effective in preventing the introduction of evidence with regard to the subsequent murder. And what Powell argued at the trial was that that reference that I'm going to do you to, that statement, that happened after the subsequent murder, and so the concern was that that would put the jury on notice that there was in fact some other murder, not before it, that she was responsible for. I guess I'm trying to figure out why that would have done that. The jury didn't know anything about a homicide involving Bartholomew. It doesn't seem to me that in viewing that, that the jury would have assumed the evidence that was referred to as alleged killing of Moss. I think that is how the Court is correct, that that is in fact how the trial court viewed the evidence. Well, and in fact, that then goes directly to the situation here again of prejudice, because we go on further. I don't know that Powell, your client, then showed a reasonable probability of prevailing on the appeal. Well, isn't that true either way, either whether it suggests she did a subsequent murder or that she did this murder? Either way, the question really is, is that prejudicial? And are we talking about the sentencing issue and the failure to present the sentencing issue and how there was a reasonable probability? This is on conviction. Yes. If the jury were led to believe that she had in effect confessed to this murder or said something that implicated her when she said, well, I'm going to do what I'm going to do. Isn't the question then, if it's improper to admit that, isn't the question whether it's prejudicial? Yes, that is the question. You know, I think that, like I said, the trial court viewed the statement as, because the counsel was effective in keeping out most of the information about the subsequent murder, the court's view was that the jury couldn't have known that it had anything to do with the subsequent murder. But the risk that the jury believed that there was something else that Ms. Powell was guilty of doing was too great. And this wasn't a case in which there was overwhelming evidence that Ms. Powell was the sole person responsible for the murder of Moss. In fact, her theory was that it was, in fact, her co-defendant who was responsible. So in that regard, for those reasons, a statement, I will get you too, was highly prejudicial. Well, but it doesn't seem to me that the record wouldn't indicate anything different than Leavitt had already been discredited at the time, and there was also substantial corroborating evidence from Berkman and other witnesses such that Powell would have been convicted with or without Leavitt's testimony. The problem with Leavitt's testimony is although he might have been impeached and discredited in some way, there was also the issue of the lawyer or the court's ruling that he couldn't be impeached with a prior conviction. So, you know, you add all these errors and factors together, and the fact is that his statement, he wasn't as discredited as he could have been. He wasn't impeached in the way he could have been. And his statement, you know, that she said I'm going to do you too, given what I spoke of earlier, would in fact have led to prejudice. I only have one minute left, so I'd like to reserve it.  Can I reserve it for rebuttal? Yes, please. May it please the Court and counsel, my name is Robert Whelan. I'm a senior deputy attorney general employed by the Office of the Attorney General of the State of Nevada. I have the privilege and honor of representing the respondents in this particular matter. The first order of business I'd like to talk to you about the court, and I spoke with counsel about this prior to the oral argument. There is an error in our answering brief occurring at page 28 with respect to a statement therein with respect to whether or not Powell's counsel objected to the uncontradicted remark. Powell's counsel did, in fact, make an objection. I wanted to make that clear. I apologize to the Court and counsel for any inconvenience that representation made. With respect to this particular case, counsel's talked about the sentencing. This Court has asked for the pre-sentence report that the Court had before it. That report was provided by Petitioner's counsel. Counsel and I discussed this previously. We're a little unsure how to proceed. I assume at this point in time it's been made part of the record or the record has been supplemented since we provided it to the Court. If it has not, I have no objection to it being included in the record in this particular appeal. Excuse me. It does reflect that, excuse me, the Petitioner was, in fact, abused during the course of her lifetime. She was physically abused by her sister's husband. Her last boyfriend physically and mentally abused her. He apparently tried to suffocate her with dog feces when she tried to leave him. The PSI also shows sexual abuse by molestation by a neighbor when she was in second grade. The PSI shows that she had a dysfunctional family life. Her mother had several nervous breakdowns and was hospitalized in a mental institution. Her parents were divorced when she was 7. Her father died in a car accident. She moved a lot between relatives. Her sister's husband abused her. She used cocaine, methamphetamine, alcohol, marijuana. She was drinking in high school and had a rough childhood. The Court took that into consideration, and it's reflected in the record. The Court noted that, you know, how she had, at least to a certain extent, cleaned up her act by not having meth available, methamphetamine available to her. But as the Petitioner was also provided with an opportunity to allocute at the time of sentencing. But as this Court has noted, we're talking about an individual who committed I mean, she shot Mr. Moss because he apparently owed her drug money. She hunted him down like an animal, literally, out in the desert and executed him. And she was involved in another homicide. And all that was before the sentencing judge at the time, Judge Wagner, rendered sentencing. So given the record and the circumstances of the offense and the other homicide, there is absolutely no reasonable basis to believe that some sort of recapitulation or enhancement of what was already before the Court would have resulted in any different sentence. It was the Nevada Supreme Court's resolution of the issue was not unreasonable under 28 U.S.C. Section 2254d. Now, let's see, with respect to the do-you-too comment by Mr. Leavitt, once again, let's assume that you take that away. You still have her other admissions. You still have Mr. Berkman's testimony. You still have the corroborating physical evidence and all the other statements and evidence showing that she committed this homicide. So even assuming, and I won't concede that there is any kind of error in the admission of that, and as a matter of fact, the fact of the matter is that she stated it. It's not hearsay. It is, in fact, admissible. There is nothing that's going to change the outcome of this case. If I'll be happy to answer any of the questions the Court may have. I don't have any questions. Nor do I. Thank you, counsel. Thank you. I just wanted to sum up one on the issue of sentencing. What Ms. Powell would have to establish in terms of prejudice on the sentencing issue is that there was a reasonable probability that had Judge Wagner heard live testimony with respect to the nature and extent of the physical and sexual abuse that she suffered as a child, that he may well have imposed a sentence of life with the possibility of parole. The difference between what was referenced in the PSI and what he could have heard had mitigation evidence been presented is sufficient to establish the difference between hope, however remote, of release and dying in prison. That's it. Let me just ask you something. This was a sentencing proceeding in Nevada. Did the judge just sentence this? Is there a hearing at sentencing? Yes. There was a sentencing hearing. In this case, Ms. Powell waived the right to have a jury impose the sentence. So the sentencing hearing was before the judge. And you are allowed to present live witnesses? Yes, sir. And there were no live witnesses presented? No. And was there no request for live witnesses? There was no presentation by counsel of any live witnesses, no. Okay. Thank you. The case is arguably submitted. The Court will stand at recess today.
judges: Reinhardt, Hawkins, Smith N. R.